JOHN C. GUGLIOTTA, ESQ. SB#177918
The Law Offices of Gugliotta & Ponzini
901 Dove Street, Suite 120
Newport Beach, CA 92660
914-813-1700 | Fax 913-813-1702
Email Gugliottalaw@optonline.net

*Attorneys for Plaintiffs*, PROVISION INTERACTIVE TECHNOLOGIES, INC., *and* PROVISION HOLDING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PROVISION INTERACTIVE TECHNOLOGIES, INC., and PROVISION HOLDING, INC.,
Plaintiffs,

vs.

PROSPERITY INVESTMENTS, LLC, and HAROLD JAHN,
Defendants.

Case No.: CV 18-6547 FMO (FFMx)

COMPLAINT FOR:
1. BREACH OF CONTRACT
2. BREACH OF CONTRACT
3. BREACH OF FIDUCIARY DUTIES
4. SPECIFIC PERFORMANCE
5. SPECIFIC PERFORMANCE
6. NEGLIGENT MISREPRESENTATION
7. FRAUD

JURY TRIAL DEMANDED

Plaintiffs Provision Interactive Technologies, Inc. (“PITI”) and Provision Holding, Inc. (“Provision”) (collectively referred to herein as the “Plaintiffs”), by and through their attorneys, The Law Offices of Gugliotta & Ponzini, allege for their Complaint against Defendants Prosperity Investments, LLC (“Prosperity”)

and Harold Jahn ("Jahn") (collectively referred to herein as the "Defendants") as follows:

## NATURE OF ACTION

1. This is an action arising out Defendants' breach of contracts, and outright fraud with respect to, every single agreement entered into between Plaintiffs and Defendants (collectively referred to herein as the "Parties").

2. The Parties entered into several agreements, including a Joint Venture Agreement (the "JVA"), two Subscription Agreements (the "SA's"), and a Point of Sales Advertising Agreement (the "POSA") (collectively referred to herein as the "Agreements"), all of which Defendants fraudulently induced Plaintiffs into entering, and all of which Defendants breached.

3. Stated briefly, and as alleged more fully below, the Agreements required in pertinent part that Prosperity place with Plaintiffs certain funds pursuant to the SA's, which it has failed to do, and further to deliver a prototype of a "next generation" ATM machine to Plaintiff PITI, which it has also failed to do.

4. However, at the time these Agreements were entered into, Defendants harbored a then existing state of mind and intention not to perform. In fact, Defendants stood to gain a tremendous windfall in being contractually bound as joint venturers with Plaintiff, had Defendants intended to perform.

5. Unfortunately, as a result of the fraud and breaches perpetrated by Defendants, Plaintiffs have suffered immense damages. In fact, without realizing the benefits of the Agreements with Defendants upon which it relied, Plaintiff has been unable to perform its core functions, and has been unable to perform under certain of its other contracts and obligations with third-parties.

6. These Agreements were so central and essential to Plaintiff's ability to function, and Plaintiffs relied so heavily on the same, that Plaintiff had on several occasions granted to Defendants limited extensions of time within which to comply. This is because Plaintiff relied so heavily on these Agreements that the cancellation of the same would be detrimental and the resulting consequences irreversible.

7. Accordingly, as alleged more fully below, Plaintiff is entitled to a judgment directing Defendants to comply with its obligations under the Agreements and place the required funds with Plaintiff together with costs, interest, and their reasonable attorneys' fees.

## THE PARTIES

8. Plaintiff PITI is a corporation organized and existing pursuant to the laws of the state of California, with its principal place of business in Chatsworth, California.

9. Plaintiff Provision is a corporation organized and existing pursuant to the laws of the state of Nevada, with its principal place of business in Chatsworth, California.

10. Upon information and belief, Defendant Prosperity is a corporation organized and existing pursuant to the laws of the state of Utah, with its principal place of business located at Suite 600, Nine Exchange Place, Salt Lake City, Utah. Upon further information and belief, Prosperity is not currently registered to do business in the state of Utah.

11. Upon information and belief, Defendant Jahn is an individual residing in the state of Utah, with an additional residence in Edmonton, Alberta, located in Canada. Jahn is the “director” of Prosperity, and is, upon information and belief, its sole officer and shareholder.

JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Specifically, Defendants are citizens of Utah and Canada, and Plaintiffs are citizens of California and Nevada.

14. This Court has personal jurisdiction over Defendants pursuant to the governing law and exclusive jurisdiction clause in the Joint Venture Agreement entered into between the Parties.

15. Venue in the Central District is proper pursuant to 28 U.S.C. §1391(b)(1) as Plaintiffs reside in Los Angeles, located in the Central District.

## FACTS COMMON TO ALL CLAIMS

### Background

16. PITI is a publicly traded company in the business of entering into mutually beneficial partnerships with nationwide vendors for the purpose of installing state-of-the-art ATMs and kiosks with holographic displays which provide customers with coupons, discounts, information, advertisements, and other promotional items.

17. Provision possesses certain skills and experience in sourcing, servicing, and marketing its holographic systems, and additionally possessed an extremely valuable strategic alliance agreement with a nationwide vendor to promote each other's products to consumers and to integrate Provision's 3D system into that of its nationwide partner's system.

### The Point of Sales Advertising Agreement

18. On or about July 17, 2017, the PITI and Prosperity entered into the POSA.

19. PITI's responsibilities thereunder were to develop the final display design and operating guidelines, designing and presenting a 3D marquis topper for the ATM banking center, coordinating software and networking specifications to integrate PITI's software programs on Prosperity's ATM banking center platform, to share with Prosperity a percentage of the revenues as more fully described in the POSA, and to provide technical support and network management.

20. PITI complied with all of its obligations under the POSA.

21. However, among Prosperity's obligations, of tantamount importance was the presentation, by Prosperity to PITI, of a prototype for its "next generation" ATM machine.

22. Prosperity failed to deliver its prototype, which has caused PITI to incur tremendous damages.

The Joint Venture Agreement

23. Defendants, desirous to "get in early" to such a promising venture, entered into the JVA with PITI for the purpose of commercializing the Provision 3D System into its nationwide partner's platform.

24. Pursuant to Defendants' desire to become involved with PITI's business, Prosperity, as an investor, agreed to contribute up to $3,000,000, for the manufacture and installation of 1,000 Toppers, a term describing the PITI 3D

system and more fully described in the JVA. In return, Prosperity would be entitled to certain revenues and proceeds earned by the Joint Venture.

25. Under the JVA, Prosperity was required to place its investment funds with PITI as follows:

a. On or before April 15, 2018, Prosperity was to place $500,000.00 with PITI;

b. On or before the later of May 15, 2018 and the installation of 167 Toppers, Prosperity was to place $500,000.00 with PITI;

c. On or before the later of June 15, 2018 and the installation of 500 Toppers, Prosperity was to place $1,000,000.00 with PITI;

d. On or before the later of July 15, 2018 and the installation of 667 Toppers, Prosperity was to place $500,000.00 with PITI; and

e. On or before the later of August 15, 2018 and the installation of 884 Toppers, Prosperity was to place $500,000.00 with PITI.

26. Upon information and belief, Defendants entered into the JVA with a pre-existing intention to breach the JVA.

27. Upon information and belief, and in the alternative, Defendants entered into the JVA with knowledge that they had no ability to perform thereunder, or should have had such knowledge.

28. Defendants failed to place any of the funds as required under the JVA.

29. At all pertinent times PITI was in compliance with its obligations under the JVA

30. PITI relied upon the placement of these funds and took a certain course of action with the expectation that such funds would be placed. Therefore, PITI has relied upon the promises of Defendants to its detriment. Had PITI known that the funds would not be placed, and that Defendants had no intention of placing same, PITI would not have entered into the JVA, would not have taken certain actions and a course of action in reliance on receiving such funds, and would have sought other business partners with the actual intention and/or ability to perform under such an agreement.

31. Therefore, on or about April 25, 2018, PITI issued a demand letter to Defendants demanding compliance with the terms of the JVA, specifically demanding Defendants place the funds as required.

32. By this letter, PITI advised Defendants that their breach was impairing PITI's ability to perform its core functions and to perform under its contracts and obligations, specifically advising Defendants of the detriment to PITI's business with its nationwide partners, with its vendors, and PITI's joint customers with national partners.

33. Defendants failed to respond to this demand letter or otherwise bring itself into compliance with the JVA.

34. Thereafter, on or about June 6, 2018, PITI again advised Defendants of their obligations to place the required funds, and reminded Defendants of the damage their breach was causing to PITI.

35. Again, Defendants failed to respond to this demand letter or otherwise bring itself into compliance with the JVA.

36. Finally, the JVA specifically provides that in the event of a dispute between the Parties, the prevailing party is entitled to recover from the other party all reasonable fees, costs, and expenses of enforcing any rights, including reasonable attorneys' fees and expenses.

The Subscription Agreements

37. Thereafter, Provision and Prosperity entered into two separate subscription agreements.

38. Each of these subscription agreements are dated April 18, 2018, with certificates of signatory dated April 26, 2018.

39. The first of the subscription agreements (the "First SA") provides for the purchase of 6,000,000 shares of Provision at the price of $0.05 per share.

40. Therefore, pursuant to the terms of this subscription agreement, Prosperity was required to place $300,000.00 with Provision.

41. Prosperity failed to place such funds with Provision.

42. The second of the subscription agreements (the “Second SA”) provides for the purchase of 5,000,000 shares of Provision at the price of $0.04 per share.

43. Therefore, pursuant to the terms of this subscription agreement, Prosperity was required to place $200,000.00 with Provision.

44. Prosperity failed to place such funds with Provision.

45. Upon information and belief, Defendants entered into the SAs with a pre-existing intention to breach the same.

46. Upon information and belief, and in the alternative, Defendants entered into the SA’s with knowledge that they had no ability to perform thereunder, or should have had such knowledge.

47. At all pertinent times, Provision was in compliance with its obligations under the SA’s.

48. Provision relied upon the placement of these funds and took a certain course of action with the expectation that such funds would be placed. Therefore, Provision has relied upon the promises of Defendants to its detriment. Had Provision known that the funds would not be placed, and that Defendants had no

intention of placing same, Provision would not have entered into the SA's, would not have taken certain actions and a course of action in reliance on receiving such funds, and would have sought other business partners with the actual intention and/or ability to perform under such an agreement.

49. Therefore, on or about June 6, 2018, Plaintiffs issued a demand letter to Defendants advising them of their obligations under the SA's, and advised them of the detrimental effect their breach was having on Plaintiffs' business. Plaintiffs demanded immediate placement of the funds.

50. Defendants failed to respond to this demand letter and continued to fail to place the required funds.

Competing Ventures

51. Upon information and belief, following the execution of the Agreement, Defendants engaged in placing investments and other funds in and with other companies and investment opportunities.

52. Upon information and belief, these and other business activities of Defendants were the cause of their inability to place the required funds with Plaintiffs, if in fact Defendants were so unable.

53. Defendants had reason to foresee that these other business activities would cause them to be unable to perform under their agreements with Plaintiffs.

54. Defendants had reason to foresee that their failure to place the required funds with Plaintiffs would cause Plaintiffs to suffer consequential damages, as a result of being unable to perform their core functions, unable to perform under existing contracts, enter into new contracts, and otherwise operate their business.

55. Defendants' breaches did in fact cause the Plaintiffs to suffer such consequential damages, including loss of revenues, damage to their existing relationship with business partners, loss of stock valuation, and losses associated with the resulting inability to place 1,000 "units" with Plaintiffs' nationwide partners and vendors. Further, the placement of these "units" was publicly communicated to shareholders and to the market, which has resulted in losses of reputation and confidence, which are reflected in the loss of stock price and further and additional actual damages.

56. These damages arose from special or particular circumstances which were actually communicated to and/or known by the Defendants.

57. The matters associated with these consequential damages should have been known by Defendants at the time of contracting, and as such were actually foreseen or reasonably foreseeable when the Agreements were formed.

58. Specifically, but not all inclusively, Defendants knew or should have known that their breach would result in permanent damage to Plaintiffs relationships with

business partners, with strategic alliance, with nationwide vendors, shareholdersand others.

AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract – Breach of JVA)

59. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

60. At all times pertinent the JVA existed as a valid contract between Prosperity and PITI.

61. At all times pertinent, PITI was in compliance with all of its obligations under the contract.

62. Under the agreement Prosperity was required to place funds with PITI as follows:

a. On or before April 15, 2018, Prosperity was to place $500,000.00 with PITI;

b. On or before the later of May 15, 2018 and the installation of 167 Toppers, Prosperity was to place $500,000.00 with PITI;

c. On or before the later of June 15, 2018 and the installation of 500 Toppers, Prosperity was to place $1,000,000.00 with PITI;

d. On or before the later of July 15, 2018 and the installation of 667 Toppers, Prosperity was to place $500,000.00 with PITI; and

e. On or before the later of August 15, 2018 and the installation of 884 Toppers, Prosperity was to place $500,000.00 with PITI.

63. Prosperity breached the contract by failing to place the funds as required.

64. As a result of this breach, PITI has been damaged in the amount of $2,500,000.00, which damages are expected to increase to $3,000,000.00 should Prosperity fail to place the final installment.

65. As a result of this breach, Plaintiffs suffered consequential damages separate and apart from damages associated with the failure of Defendants to place the required funds.

66. The matters associated with these consequential damages arose from special or particular circumstances which were actually communicated to Defendants and/or should have been known by Defendants at the time of contract and were actually foreseen or reasonably foreseeable by Defendants.

67. The consequential damages suffered by Plaintiffs are in an amount to be determined at trial, but in no event less than $10,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract – Breach of SA's)

68. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

69. At all times pertinent the SA's existed as valid contracts between Prosperity and Provision.

70. At all times pertinent, Provision was in compliance with all of its obligations under the SA's.

71. Under the agreement Prosperity was required to place funds with PITI as follows:

i. Under the First SA, Defendants were required to place $300,000.00 with Provision; and

ii. Under the Second SA, Defendants were required to place $200,000.00 with Provision.

72. Prosperity breached the contract by failing to place the funds as required.

73. As a result of this breach, PITI has been damaged in the amount of $500,000.00

74. As a result of this breach, Plaintiffs suffered consequential damages separate and apart from damages associated with the failure of Defendants to place the required funds.

75. The matters associated with these consequential damages arose from special or particular circumstances which were actually communicated to Defendants

and/or should have been known by Defendants at the time of contract and were actually foreseen or reasonably foreseeable by Defendants.

76. The consequential damages suffered by Plaintiffs are in an amount to be determined at trial, but in no event less than $10,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Fiduciary Duties)

77. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

78. Under the JVA, the Parties owed each other fiduciary duties as joint venturers.

79. These fiduciary duties include but are not limited duties to contribute to the joint venture under the JVA, to refrain from usurping business opportunities, to refrain from engaging in conduct that would inhibit their ability to perform as joint venturers under the JVA, and to act in good faith in the performance of their obligations under the JVA.

80. Defendants breached these and other fiduciary duties in failing to perform under the JVA, by engaging in conduct which inhibited their ability to perform under the JVA, and not acting in good faith with respect to their joint venture partners.

81. Plaintiffs suffered damages as a proximate result of the breaches by Defendants in an amount to be determined at trial but in no event less than $13,000,000.00.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Specific Performance – JVA)

82. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

83. As alleged above, the Prosperity entered into the JVA with PITI.

84. As alleged above, pursuant to the JVA, Prosperity was required to place investment funds in the amount of $3,000,000.00 with PITI.

85. In return, Prosperity would share in the revenues earned by the joint venture.

86. The JVA is reasonable and supported by adequate consideration.

87. Prosperity breached its obligation under the JVA by failing and refusing to place the required funds with PITI, despite due demand.

88. But for requiring specific performance under the JVA, PITI has no adequate legal remedy.

89. The contractual terms are sufficiently definite, enabling the Court to know what it is to enforce, namely, the placement of the funds as required under the JVA.

90. The performance requested herein is identical to that promised in the JVA.

91. Court ordered specific performance will not operate an injustice or oppression to Defendants in that the remedy is mutual, so far as Defendants gain a share of the joint venture revenues in return for their investment.

92. As such, PITI is entitled to specific performance under the JVA, by court decree, ordering and directing Prosperity to place the required $3,000,000.00 with PITI.

<u>AS AND FOR A FIFTH CAUSE OF ACTION</u>
(Specific Performance – The SA's)

93. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

94. As alleged above, the Prosperity entered into the SA's with Provision.

95. As alleged above, pursuant to the SA, Prosperity was required to place investment funds in the total amount of $500,000.00 with Provision.

96. In return, Prosperity would receive a total of 11,000,000 shares of the common stock of Provision.

97. The SA's are reasonable and supported by adequate consideration.

98. Prosperity breached its obligation under the SA's by failing and refusing to place the required funds with Provision, despite due demand.

99. But for requiring specific performance under the SA's, Provision has no adequate legal remedy.

100. The contractual terms are sufficiently definite, enabling the Court to know what it is to enforce, namely, the placement of the funds as required under the SA in return for the 11,000,000 shares of common stock of Provision.

101. The performance requested herein is identical to that promised in the SA.

102. Court ordered specific performance will not operate an injustice or oppression to Defendants in that the remedy is mutual, so far as Defendants gain 11,000,000 shares of the common stock of provision as good and valuable consideration.

103. As such, Provision is entitled to specific performance under the SA, by court decree, ordering and directing Prosperity to place the required $500,000.00 with Provision. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

AS AND FOR A SIXTH CAUSE OF ACTION
(Negligent Misrepresentation)

104. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

105. Prior to entering into the JVA and the SA’s Defendants made a misrepresentation with respect their ability and willingness to place the required funds.

106. Specifically Defendants stated that they were ready, willing, and able to perform under the JVA and SA's.

107. These statements were false at the time they were made.

108. Defendants had no reasonable ground to believe these statements to be true.

109. Defendants intended its statements to induce Plaintiffs to rely on the facts as misrepresentation.

110. Plaintiffs were ignorant of the truth and had a justifiable reliance on the misrepresentation by Defendants.

111. As a result, Plaintiffs have suffered damages in the amount of 13,500,000.00.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Fraud)

112. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs as if set forth fully herein.

113. Defendants made misrepresentations to Plaintiffs in that Defendants falsely represented that they had an ability to place the funds as required under the Agreements.

114. Further, Defendants concealed their pre-existing intention not to perform under the Agreements.

115. Defendants knew the falsity of their statements and of the deceitful nature of their omission.

116. Defendants these misrepresentations and omissions with an intent to defraud Plaintiffs by inducing their reliance on same.

117. Plaintiffs justifiably relied on the statements and assurances of Defendants in that they had no reason not to trust the representations of Defendants.

118. As a result of the foregoing, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than $13,500,000.00.

WHEREFORE, Plaintiff demands judgment as follows:

(a) On the First Cause of Action, in favor of Plaintiff and against Defendant in the amount of $13,000,000.00, together with interest thereon and Plaintiffs' reasonable attorneys' fees;

(b) On the Second Cause of Action, in favor of Plaintiff and against Defendant in the amount of $10,500,000.00, together with interest thereon;

(c) On the Third Cause of Action, in favor of Plaintiff and against Defendant in the amount of $13,000,000.00, together with interest thereon;

(d) On the Fourth Cause of Action, in favor of Plaintiff and against Defendant in the amount of $3,000,000.00, together with interest thereon;

(e) On the Fifth Cause of Action, in favor of Plaintiff and against Defendant in the amount of $500,000.00, together with interest thereon;

(f) On the Sixth Cause of Action, in favor of Plaintiff and against Defendant in the amount of $13,500,000.00, together with interest thereon;

(g) On the Seventh Cause of Action, in favor of Plaintiff and against Defendant in the amount of $13,500,000.00, together with interest thereon;

(h) For its costs and disbursements, including its reasonable attorneys' fees; and

(i) For such other and further relief as the Court deems just, equitable and proper.

Dated: Newport Beach, CA

July 29, 2018

THE LAW OFFICES OF GUGLIOTTA & PONZINI

By:________/S/_____________

John C. Gugliotta, Esq.
901 Dove Street, Suite 120
Newport Beach, CA
914-813-1700 (tel.)
914-813-1702 (fax)
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims and issues to which the right to jury trial exists.

Dated: Newport Beach, CA

July 29, 2018

THE LAW OFFICES OF GUGLIOTTA & PONZINI

By:______*/S/* ____________

John C. Gugliotta, Esq.
901 Dove Street, Suite 120
Newport Beach, CA
914-813-1700 (tel.)
914-813-1702 (fax)
Attorneys for Plaintiffs